UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| T.E., <br>    Plaintiff, <br><br>   v. <br><br> MARTIN J. O'MALLEY, <br>  COMMISSIONER OF SOCIAL SECURITY, <br><br>    Defendant. | No. 20 CV 7838 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

  Pending before the Court are plaintiff's motion to reverse and remand the ALJ's decision denying the application for disability benefits that she filed on behalf of her son, T.E. [21]; defendant's motion for summary judgment [25]; and plaintiff's reply [29].[1] For the following reasons, the Court grants plaintiff's motion, denies defendant's motion, and remands this case for further administrative proceedings.

**Legal Standards**

  The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. Substantial evidence is "not a high threshold: it means only 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Karr v. Saul*, 989 F.3d 508, 511 (7th Cir. 2021). At the same time, the standard "is not entirely uncritical. Where the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Brett D. v. Saul*, No. 19 C 8352, 2021 WL 2660753, at *1 (N.D. Ill. June 29, 2021).

  Children are considered disabled under the Social Security Act if they have a "medically determinable physical or mental impairment, which results in marked and severe functional limitations," that "has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(i). The regulations establish a three-step process to evaluate whether a child is disabled:

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings, except for citations to the administrative record [12], which refer to the page numbers in the bottom right corner of each page.

(1) the child cannot be engaged in any "substantial gainful activity," 20 C.F.R. § 416.924(b); (2) the child must have a medically determinable impairment or combination of impairments that qualifies as "severe," 20 C.F.R. § 416.924(c); and (3) the impairment or impairments must meet, medically equal, or functionally equal the severity of one of the listings in the Social Security regulations, 20 C.F.R. § 416.924(d). If, as in this case, the impairment does not meet or medically equal a listing, the ALJ considers six domains of functioning to evaluate whether an impairment functionally equals a listing. 20 C.F.R. § 416.926a(b)(1). These domains are (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for yourself, and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1)(i)-(vi). To functionally equal a listing, the impairment must produce a "marked" limitation in at least two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d).

## Discussion

In this case, the ALJ found that T.E., who was 12 years old when the application was filed, had a marked limitation in interacting and relating with others but only a less than marked limitation in acquiring and using information. [12-1] 18. Plaintiff argues that the ALJ's decision is not supported by substantial evidence because the ALJ (1) did not discuss T.E.'s Northwest Evaluation Assessment (NWEA) scores, which suggested that T.E.'s math and reading scores were between two and three standard deviations below the mean; (2) did not give a reasoned explanation for his decision that T.E. had only a less than marked limitation in acquiring and using information, but merely identified the evidence on both sides of the question and stated a conclusion; and (3) improperly relied on the opinion of Dr. Colette Valette, an independent medical expert who opined that T.E.'s limitation in acquiring and using information was less than marked because T.E. went from 900 minutes per week in special education classes in 2017 to 600 minutes per week in 2018. [21] 10-12. The Court agrees with plaintiff that these errors in the ALJ's decision necessitate a remand.[2]

### A. T.E.'s NWEA Test Scores

First, the ALJ failed to discuss T.E.'s NWEA scores even though plaintiff's counsel brought this evidence to the ALJ's attention in a pre-hearing brief and again during the hearing. [12-1] 66-67, 203.

The NWEA assessment showed that plaintiff's reading scores ranged from 151-168 and his math scores ranged from 155-168, both of which placed him at a first-grade level even though he was in seventh grade. [*Id.*] 342. Moreover, publicly

---

[2] Because these issues are dispositive, the Court does not reach plaintiff's arguments that additional errors in the ALJ's also warrant a remand.

2

available information on the website of the company that designed the NWEA assessment shows that the mean scores for an average child of T.E.'s age are 214.20 and 220.21, which means that T.E.'s scores were at least two standard deviations below the mean. To support this finding, the Court is relying on the website cited in plaintiff's brief,[3] and the Court notes that the Commissioner did not object to the Court's consideration of information from that website or to the accuracy of plaintiff's characterization of T.E.'s test scores. *See* [25] 6-8. Instead, the Commissioner argues that the ALJ's failure to consider the NWEA scores was immaterial because the state agency reviewers–on whose opinions the ALJ relied–"presumably" considered the NWEA scores in evaluating T.E.'s limitations. [*Id.*] 6. In support, the Commissioner notes that the agency reviewers considered T.E.'s performance on a separate standardized test (the WIAT), which was reported on the same page in the record as T.E.'s NWEA scores, and thus "presumably" the reviewers also considered the NWEA scores. [*Id.*] (citing [12-1] 511). The Court rejects this argument: the state agency reviewers' reports specifically identified what information they relied on in evaluating T.E.'s limitations, and the NWEA scores were not included there. [12-1] 109, 120.

Furthermore, the ALJ's failure to discuss the NWEA scores was a critical error. Applicable regulations establish that a child can have a marked limitation if the child has "a valid score that is two standard deviations or more below the mean, but less than three standard deviations, on a comprehensive standardized test designed to measure ability or functioning in that domain, and [the child's] day-to-day functioning in domain-related activities is consistent with that score." 20 C.F.R. § 416.926a(e)(2)(i)(iii). Here, T.E. had such a score–indeed, his NWEA scores even suggest that he might have had an extreme functional limitation–but the ALJ simply failed to discuss this evidence, and thus the Court cannot know how or whether the ALJ factored this evidence into his decision. While the Court is mindful that an ALJ need not discuss every piece of evidence in the record, *see Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021), and while the Court recognizes that test scores alone cannot establish marked or extreme limitations, *see* 20 C.F.R. § 416.926a(e)(4)(i), these general principles do not excuse the ALJ's failure to consider the NWEA scores together with the entire record. 20 C.F.R. § 416.926a (e)(4). Especially considering the ALJ's failure to build a logical bridge supporting his decision, which the Court discusses immediately below, the failure to consider the NWEA scores warrants remand.

### B. Lack of Reasoned Decision

Second, the Court recognizes that "social-security adjudicators are subject to only the most minimal of articulation requirements," and that they "need not . . . fully summarize the record[ ] or cite support for every proposition or chain of reasoning."

---

[3] *See* https://teach.mapnwea.org/impl/MAPGrowthNormativeDataOverview.pdf at page 3 (student achievement norms) (accessed July 24, 2024).

3

*Warnell v. O'Malley*, 97 F.4th 1050, 1054 (7th Cir. 2024). But the ALJ's decision in this case does not satisfy even that "most minimal" articulation requirement.

In holding that T.E. had only a less than marked limitation in acquiring and using information, the ALJ simply identified the evidence that was favorable to plaintiff's case, listed the evidence that was unfavorable to plaintiff's case, and concluded "Therefore, the undersigned finds that the record supports a less than marked limitation in acquiring and using information." [12-1] 19. As Courts in this District have recognized, simply providing "a list of evidence punctuated with a conclusion does not discharge an ALJ's duty to form a logical bridge between the evidence and his conclusion[.]" *Pimentel v. Astrue*, No. 11 CV 8240, 2013 WL 93173, at *9 (N.D. Ill. Jan. 8, 2013); *see also Pamela Z. v. O'Malley*, No. 21 CV 3270, 2024 WL 1858450, at *2 (N.D. Ill. Apr. 29, 2024) (same). But that is precisely what the ALJ did in this case. As a result, the Court cannot discern why the ALJ found the evidence that was unfavorable to plaintiff's case more persuasive than the evidence that was favorable to plaintiff's case. Because the Court cannot meaningfully review the ALJ's decision, particularly where the ALJ failed to discuss seemingly critical evidence (the NWEA scores) that was consistent with plaintiff having a marked or extreme limitation in acquiring and using information NWEA test scores, remand is warranted.

## C. Reliance on Dr. Valette's Opinion

At the administrative hearing, Dr. Valette testified that T.E. did not have a marked limitation in acquiring and using information because the amount of time he spent in special education classes was reduced over time, meaning that his condition had improved. [12-1] 63-66. This prompted the ALJ to ask whether someone could improve in one domain of functioning but continue to have a marked limitation:

> I am struggling to understand even if there is impairment. Somebody can remain markedly impaired even with the improvement. You haven't explained why that is not so. I mean, just hypothetically speaking. Isn't – am I not accurate in thinking there can be improvement and if somebody is marked and extreme and their improvement occurs, and they are still marked that is one possible outcome or reading of a given record? Maybe they have improved to the point where they are not markedly limited.

[*Id.*] 66.

Dr. Valette did not provide a substantive answer to this question, nor did the ALJ address this concern in his decision. [*Id.*]. It therefore appears to the Court, particularly given the absence of any reasoned explanation in the ALJ's decision, that the ALJ simply accepted the fact that the reduced special education time meant that

T.E.'s limitations had improved. This was problematic for two reasons. First, special education services are not dispositive and "good performance in a special education setting does not mean that you are functioning at the same level as other children your age who do not have impairments." 20 C.F.R. § 416.924a(b)(7)(iv). Thus, despite what Dr. Valette characterized as his "improvement," T.E. still needed 600 minutes of special education in math and reading per week, T.E.'s test scores in these areas were at least 2 standard deviations from the mean, and T.E.'s teachers opined that he had very serious limitations in those areas. [12-1] 341-342. Second, "[t]he key is not whether one has improved (although that is important), but whether they have improved enough to meet the legal criteria of not being classified as disabled." *Murphy v. Colvin*, 759 F.3d 811, 819 (7th Cir. 2014). There is no indication in Dr. Valette's opinion that she found T.E.'s improvement rose to that level; she simply opined that the reduced special education time meant, *ipso facto*, that T.E.'s limitation in acquiring and using information could not have been marked. The ALJ's finding that Dr. Valette's opinion was "largely persuasive," [12-1] 20, which did not address the opinion's evident inconsistency with the legal principles discussed above, provides further support for the Court's conclusion that substantial evidence does not support the denial of benefits.

## Conclusion

For these reasons, plaintiff's motion to reverse and remand [21] is granted and defendant's motion for summary judgment [24] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with the Court's ruling.

**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: August 1, 2024**